# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA E. CEJA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,[1]<br>**Acting Commissioner of Social<br>Security,**<br><br>　　　　　Defendant. | NO. CV 12-3513-MAN<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff filed a Complaint on April 23, 2012, seeking review of a decision by the Social Security Commissioner ("Commissioner") that as of June 8, 2007, plaintiff ceased to be eligible for a period of disability ("POD") and disability insurance benefits ("DIB"). On November 5, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on January 3, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

---

[1]     Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  (*See* Fed. R. Civ. P. 25(d).)

1

2

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

3

On December 17, 2001, plaintiff filed an application for a POD and DIB alleging an inability

4   to work since April 4, 2001.  (Administrative Record ("A.R.") 38.)  On January 24, 2002, the Social

5   Security Administration ("SSA") determined that plaintiff was disabled as of April 4, 2001, due to

6   anxiety related disorders that met the criteria of Medical Listing 12.06 A and B.[2]  (A.R. 16, 38.)

7   Plaintiff has past relevant work experience as a "manager[] of food services and fast food

8   services." (A.R. 16, 85, 94.)

9   _____

10   [2]      Listing 12.06 states in relevant part:

11          *Anxiety Related Disorders*:   In these disorders anxiety is either the
        predominant disturbance or it is experienced if the individual attempts to master
12      symptoms; for example, confronting the dreaded object or situation in a phobic
        disorder or resisting the obsessions or compulsions in obsessive compulsive
13      disorders.
              The required level of severity for these disorders is met when the
14      requirements in both A and B are satisfied, or when the requirements in both A and
        C are satisfied.
15              A. Medically documented findings of at least one of the following:
                      1. Generalized persistent anxiety accompanied by three out of
16                   four of the following signs or symptoms:
                            a. Motor tension; or
17                          b. Autonomic hyperactivity; or
                            c. Apprehensive expectation; or
18                          d. Vigilance and scanning;
        or
19                    2. A persistent irrational fear of a specific object, activity, or
                     situation which results in a compelling desire to avoid the
20                   dreaded object, activity, or situation; or
                      3. Recurrent severe panic attacks manifested by a sudden
21                   unpredictable onset of intense apprehension, fear, terror and
                     sense of impending doom occurring on the average of at least
22                   once a week; or
                      4. Recurrent obsessions or compulsions which are a source of
23                   marked distress; or
                      5. Recurrent and intrusive recollections of a traumatic
24                   experience, which are a source of marked distress;
        AND
25              B. Resulting in at least two of the following:
                      1. Marked restriction of activities of daily living; or
26                    2. Marked difficulties in maintaining social functioning; or
                      3. Marked difficulties in maintaining concentration, persistence,
27                   or pace; or
                      4. Repeated episodes of decompensation, each of extended
28                   duration.

The SSA conducted a continuing disability review[3] of plaintiff's case and, on June 12, 2007, found that plaintiff had medically improved as of June 2007.  The SSA determined that her benefits should cease on the last day of August 2007.  (A.R. 41-44.)  Plaintiff requested reconsideration of the SSA's determination.  (A.R. 45.)

On August 5, 2008, a Disability Hearing Officer ("DHO") also concluded that plaintiff's "condition had improved since the comparison point decision (CPD) of 1/24/02" and affirmed the decision to terminate her disability benefits.  (A.R. 46-55.) The DHO determined that plaintiff had the residual functional capacity ("RFC") to perform light work, except that she was "limited to occasional[ly] reaching over head."  (A.R. 53.)  Further, plaintiff was moderately limited in the ability to:  remember, understand, and carry out detailed instructions; and interact with the general public.  (*Id.*)  Plaintiff appealed this determination. (A.R. 59.)

On August 24, 2009, plaintiff, who was represented by either an attorney or a non-attorney representative,[4] appeared and testified at a hearing before Administrative Law Judge Sally C. Reason (the "ALJ").  (A.R. 441-51.)  June Hagen, a vocational expert ("VE"), also testified.  (*Id.*)

On September 14, 2009, the ALJ issued an unfavorable decision (the "unfavorable subject decision"), finding, *inter alia*, that plaintiff had medically improved as of June 8, 2007.  (A.R. 16-

---

[3]     When a claimant has been granted benefits, her "continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 404.1594(a); *see also* 20 C.F.R. § 404.1589 ("After we find that you are disabled, we must evaluate your impairment(s) from time to time to determine if you are still eligible for [payments based on disability]").  To accomplish this, the SSA engages in "continuing disability reviews," which vary in frequency.  20 C.F.R. § 404.1589; Flaten v. Sec'y of Health and Hum. Servs., 44 F.3d 1453, 1460 (9th Cir. 1995).  Because a presumption of continuing disability arises once a claimant has been identified as disabled, the Commissioner has the burden of producing evidence to meet or rebut the presumption. *See* Bellamy v. Sec'y of Health and Hum. Servs., 755 F.2d 1380, 1381 (9th Cir. 1985).

[4]     It is unclear whether plaintiff was represented by an attorney or a non-attorney representative.  In the ALJ's September 14, 2009 decision, the ALJ stated that plaintiff "was represented by Joe Solomon, MSW."  (A.R. 16.)  The transcripts from the August 24, 2009 administrative hearing, however, indicate that plaintiff "was represented by Joe Solomon, [an] Attorney."  (A.R. 443.)

24.)  The Appeals Council denied plaintiff's request for review of the unfavorable subject decision. (A.R. 8-10).  That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff had not engaged in substantial gainful since June 8, 2007, the cessation date ("CD") of plaintiff's benefits. (A.R. 23.)  As of the CD, the ALJ determined that plaintiff had the severe impairments of "sprains of the cervical and lumbar spines, obesity and post traumatic stress disorder [("PTSD")] and/or adjustment disorder," but she "did not have an impairment or combination of impairments that me[t] or equal[ed] in severity any impairment listed at Appendix 1 to Subpart P of Regulations no. 4." (*Id.*)  The ALJ also determined that "[plaintiff] medically improved by the [CD] and such improvement related to her ability to work." (*Id.*)

After reviewing the record, the ALJ determined that as of the CD, plaintiff had the RFC to perform "light work involving simple routine tasks and limited public contact." (A.R. 23.)  The ALJ also found that plaintiff was unable to perform her past relevant work ("PRW") as a "manager[] of food services and fast food services" (A.R. 16, 24); however, after having considered plaintiff's age, education, work experience, and RFC as of the CD, the ALJ found that other jobs exist in the national economy that plaintiff could perform, including "cleaner/housekeeper," "assembler, small products," and "marker" (A.R. 22-24).  Accordingly, the ALJ concluded that "[plaintiff]'s 'disability' ceased June 8, 2007[,] and that her entitlement to a [POD] and to [DIB] . . . ended August 31, 2007, the close of the second month following the month of cessation of 'disability' status." (A.R. 24.)

///
///
///
///

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following issues:  (1) whether the ALJ properly determined the onset date and duration of plaintiff's disability; (2) whether the ALJ fully and properly developed the record; (3) whether the ALJ properly assessed plaintiff's RFC and posed a proper hypothetical question to the VE; and (4) whether the ALJ properly considered plaintiff's subjective complaints and her husband's statements regarding her limitations.  (Joint Stipulation ("Joint Stip.") at 4.)

**I.    Remand Is Warranted, Because The Favorable Subsequent Decision Awarding Benefits May Be Material To The Instant Proceeding.**

As noted *supra*, in the unfavorable subject decision dated September 14, 2009, the ALJ determined that plaintiff was not disabled as of June 8, 2007.  (A.R. 16-24.)  While appeal of that decision was pending, plaintiff was awarded benefits in connection with her second application for disability benefits, in which she sought benefits commencing on April 4, 2001 (the "favorable subsequent decision").  (Joint Stip. at Attachment ("Att.") A.)  Specifically, by the favorable subsequent decision, plaintiff was found to be disabled and eligible to receive disability payments as of September 11, 2009.[5]  (*Id.*)

In view of the close proximity -- indeed, the three day overlap -- between the unfavorable subject decision dated September 14, 2009, and the favorable subsequent decision finding plaintiff

---

[5]    Beyond the three-day overlap between the unfavorable subject decision and the favorable subsequent decision discussed *infra*, the two decisions are also strikingly inconsistent in another respect.  In the unfavorable subject decision, it was noted that "[b]y determination dated January 24, 2002, [plaintiff] was found disabled effective April [4], 2001, based on an anxiety disorder that was found to meet Listing 12.06 A [and] B."  (A.R. 16.)  The ALJ found, however, that plaintiff's "disability" ceased on June 8, 2007.  (A.R. 24.)  Thus, in the unfavorable subject decision, plaintiff was found to be "disabled" from April 4, 2001, through June 7, 2007.  Confusingly, however, in the favorable subsequent decision, it was noted that, notwithstanding plaintiff's allegations of disability commencing on April 4, 2001, due to "[a]nxiety[,] depression[,] [PTSD,] memory loss[,] neck[,] shoulder[,] headaches[, and] heart," the medical evidence of record "show[ed] that [her] condition did not prevent all work activity *until [September 11, 2009]*."  (Joint Stip. at Att. A; emphasis added.)

disabled as of September 11, 2009, plaintiff contends that the Appeals Council should have engaged the services of a medical expert to properly assess:  the onset date and duration of plaintiff's disability; and whether plaintiff met Listing 12.06 for the approximately two years from the CD until September 11, 2009.  (Joint Stip. at 4-7, 10-12.)  Put differently, it appears that plaintiff argues this case should be remanded to consider the impact of the favorable subsequent decision on the unfavorable subject decision and its finding that the payment of benefits to plaintiff should be ceased on the last day of August 2007.  (Joint Stip. at 3–4, 8.)  The Court agrees and finds that remand is appropriate for further consideration of the factual issues, particularly with respect to plaintiff's mental limitations, to determine the propriety of the unfavorable subject decision in view of the subsequent favorable decision.

The Ninth Circuit has provided guidance as to when a case should be remanded to reconcile two different disability determinations.  In Bruton v. Massanari, 268 F.3d 824 (9th Cir. 2001), the plaintiff's initial disability application was denied on April 9, 1996, but a subsequent application for benefits was granted on February 26, 1999, finding plaintiff to be disabled as of April 10, 1996. *Id.* at 826-27.  The court held that the district court did not err in denying the plaintiff's motion to remand and found that the differing outcomes were "not inconsistent," because the plaintiff's "second application involved different medical evidence, a different time period, and a different age classification." *Id.* at 827.

In Luna v. Astrue, 623 F.3d 1032 (9th Cir. 2010), the plaintiff's first disability application was denied on January 27, 2006, but a subsequent application for benefits was granted on August 20, 2007, and the plaintiff was found to be disabled as of January 28, 2006, "which is one day after the date [the plaintiff] was found not to be disabled based on her first application." *Id.* at 1034.   The Ninth Circuit affirmed the district court's remand of the case to permit the Commissioner to conduct further administrative proceedings to reconcile the different disability outcomes.   *Id.* at 1033.   The Ninth Circuit agreed with "the proposition that, 'in certain circumstances, an award based on an onset date coming in immediate proximity to an earlier

7

denial of benefits is worthy of further administrative scrutiny to determine whether the favorable event should alter the initial, negative outcome on the claim.'"  *Id.* at 1034 (*citing* Bradley v. Barnhart, 463 F. Supp. 2d 577, 580–81 (S.D. W. Va. 2006)).  The Ninth Circuit found that because "[t]here was only one day between the denial of [the plaintiff]'s first application and the disability onset date specified in the award for her successful second application," and there was "uncertainty" as to the medical evidence considered by the ALJ in the different decisions, "remand for further factual proceedings was an appropriate remedy."  *Id.* at 1035.

The question presently before this Court is whether remand is appropriate to reconcile the different disability outcomes in this case.  In both Luna and Bruton, there was a close proximity -- *to wit*, one day -- between the date through which the ALJ found the plaintiff to be not disabled based on her/his first application and the disability onset date specified in the second, successful application.  Here, like Luna and Bruton, the date of the unfavorable subject decision not only lies in close proximity but also overlaps the disability onset date specified in the favorable subsequent decision.  However, unlike the Luna and Bruton cases, in her unfavorable subject decision dated September 14, 2009, the ALJ specifically did not make any "finding[s] or decision[s] . . . concerning [plaintiff]'s disability status for the period after [the CD of] June 8, 2007" (A.R. 24); thus, there is more than a two year difference between the two different disability determinations. As such, this case is distinguishable from both Luna and Bruton.

The Court next considers whether the favorable subsequent decision was based upon different medical evidence than that presented in connection with the unfavorable subject decision.  In connection with the favorable subsequent decision, the record contains the SSA's letter awarding plaintiff disability benefits; however, the medical evidence that formed the basis of that grant of benefits was not submitted in this case.  (*See* Joint Stip. at Att. A.)  As relevant here, the SSA letter notes that, in determining plaintiff's disability, it relied on five reports from four different medical sources.  (*See id.*, reports received from Thomas Grogan, M.D., George Kline, M.D., Burg and Brock, and Izzi Medical Associates.)

8

In determining that plaintiff was not disabled, the ALJ considered, and rejected, the following from plaintiff's treating physician Dr. George Kline:  (1) a "Short-Form Evaluation for Mental Disorders" dated January 17, 2002, indicating, *inter alia*, that he had seen plaintiff on a monthly basis since May 19, 2001, and plaintiff suffered from PTSD and was either "fair" or "poor" in certain mental work-related abilities (A.R. 178-81); (2) an April 23, 2009 "Medical statement concerning depression with anxiety, OCD, PTSD, or panic disorder" form indicating, *inter alia*, that plaintiff was either moderately or markedly impaired in work limitations related to her mental state (A.R. 394-96); (3) a letter dated May 9 2009, indicating that plaintiff had been under his treatment since April 4, 2001, for severe post traumatic stress ("PTSD"), and she continued to be "under treatment and remains disabled" (A.R. 397); and (4) a July 9, 2009 "Medical Source Statement (Mental)" indicating that plaintiff was moderately, markedly, or extremely limited in her mental work-related abilities (A.R. 389).  In denying plaintiff's request for review, the Appeals Council also considered a report from Dr. Kline, dated December 29, 2009, which indicated, *inter alia*, that plaintiff had been under his treatment for PTSD since April 4, 2001.  (A.R. 412-13.)  Dr. Kline also noted that "[p]rior to [her] 3/7/07 fall, [plaintiff] was attending one time per month.  After the 3/7/07 fall, she had appointments three times per month."  (A.R. 412.)  Dr. Kline opined that there has been an "absence of any decrease in severity of her disability." (*Id.*)  He also noted that "[m]edical evaluations of her condition indicate she has increased memory loss since the 3/7/07 incident, which is directly related to the fall." (*Id.*)  He also noted that the March 7, 2007 incident also "resulted in aggravated [PTSD]."[6]  (A.R. 413.)

---

[6]    Although Dr. Kline's December 29, 2009 report was not considered by the ALJ in rendering her unfavorable subject decision, the Appeals Council considered that report in its review of the decision and found that it did not "provide a basis for changing the [ALJ's] decision" and, thus denied plaintiff's request for review.  (*See* A.R. 5, 8-9.)  Because the Appeals Council considered the newly submitted evidence in deciding whether to review the ALJ's decision, this Court also must consider such evidence in determining whether the ALJ's decision was supported by substantial evidence and free from legal error.  *See* Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012)(holding that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence").

In determining that plaintiff was disabled, the SSA also considered a report from Dr. Kline that was "received" on December 18, 2009, which the second ALJ likely found persuasive in finding plaintiff disabled. (Joint Stip. at Att. A.)  Significantly, it appears that the substance of all Dr. Kline's reports have generally indicated that he has had a longstanding treating relationship with plaintiff (since 2001) and that her symptoms are of longstanding duration and are ongoing. (A.R. 397, 412-13.)  Further, there does not appear to be an acute event that might reasonably be expected to have precipitated a change of disability between 2007 and 2009.  Rather, based on Dr. Kline's December 29, 2009 report, it appears that plaintiff's condition worsened soon after her fall on March 7, 2007, a date merely two months prior to the CD on which the ALJ's unfavorable subject decision found plaintiff to have made sufficient medical improvement to warrant a finding of non-disability.  (A.R. 412.)

Given that one of the key grounds in the ALJ's unfavorable subject decision for rejecting Dr. Kline's opinion was his limited treatment notes (A.R. 16-17), the report before the second ALJ could have been a more complete record, and there may be a "'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application." Luna, 623 F.3d at 1035 (*quoting* Booz v. Sec'y of Health & Hum. Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984)).  Further, both the unfavorable subject decision and the favorable subsequent decision place plaintiff in the same age classification at the time they were rendered, which also weighs in favor of remand under Luna and Bruton.  (A.R. 22.)

On the record before it, the Court is unable to "easily reconcil[e]" the two decisions or to assess the records on which they were based.  Luna, 623 F.3d at 1035.  Instead, the record "indicates that further consideration of the factual issues is appropriate to determine whether the outcome of the first application should be different." *Id.*  This matter should, therefore, be remanded for further proceedings.[7]  Harman v. Apfel, 211 F.3d 1172, 1175–78 (9th Cir.

---

[7]     The Court notes that the Appeals Council also had the benefit of the subsequent decision granting benefits as of September 11, 2009, but found that it would not "warrant a

1    2000)(where there are outstanding issues that must be resolved before a determination of

2    disability can be made, and it is not clear from the record that the ALJ would be required to find

3    the claimant disabled if all the evidence were properly evaluated, remand is appropriate).

4

5    Plaintiff asserts as other issues that the ALJ failed: to find that her mental impairments met

6    or equaled Listing 12.06; to fully and fairly develop the record with respect to plaintiff's mental

7    limitations by failing to obtain additional treatments notes from treating physicians Dr. Kline and

8    Dr. David Mohamadi; and to properly assess plaintiff's mental RFC. (Joint Stip. at 6-7, 12-15, 28-

9    31.) As noted above, the additional report that the SSA received from Dr. Kline could undermine

10   the ALJ's criticism regarding Dr. Kline's lack of treatment notes and could change the weight she

11   gave to this treating physician's opinion.[8]  Further, after fully developing the record, the ALJ's

12   _____

13   change in the [ALJ's] decision." (A.R. 9.) The Appeals Council chose to consider the benefit grant
     but then failed to provide any explanation or to supplement the record to make it possible for this
14   Court to review the correctness of the Appeals Council's discounting of the subsequent benefit
     grant. That plainly was error under Luna, 623 F.3d at 1035; see also Daniel v. Astrue,
15   2011 WL 3501759, at *6 (C.D. Cal. Aug. 9, 2011)(finding need for remand based, in part, on
     Appeals Council's failure to explain why subsequent evidence, including subsequent grant of
16   benefits, did not warrant changing initial decision).

17       [8]   The Court also finds that the ALJ failed to fully develop the record with respect to
18   both Dr. Kline and Dr. David Mohamadi, because it was evident that plaintiff's existing record did
     not contain treating medical evidence referenced elsewhere in the record. Thus, the ALJ should
19   have made additional, reasonable efforts to develop the evidence or, at the very least, kept the
     record open for supplementation. The medical evidence submitted by Dr. Kline indicates that
20   there was an earlier treatment relationship dating back to April 4, 2001, yet the record does not
     contain any treatment records from Dr. Kline. (A.R. 397, 412.) Further, in his August 21, 2009
21   letter, Dr. Mohamadi notes that plaintiff has been under his treatment since October 2005, for "[a]
     history of repeated recent severe [PTSD] and head trauma." (A.R. 410.) Yet, there are only
22   treatment records from Dr. Mohamadi in the record for what appears to be physical complaints
     of "when coughs green mucous," tonsil pain, "throat head pain/cough," "chest pain [and] cough"
23   and "pap smear." (A.R. 256-69.)

24       Thus, the conclusory forms submitted by plaintiff, particularly in view of the absence
     of other treating records, strongly suggest that further development of the record would aid the
25   ALJ in making a proper determination of whether plaintiff has an impairment or combination of
     impairments that preclude(s) her from gainful employment. Tonapetyan v. Halter, 242 F.3d 1144,
26   1150 (9th Cir. 2001)(noting that an ALJ "has an independent duty to fully and fairly develop the
     record and to assure that the claimant's interests are considered")(citations and internal
27   quotations omitted); see Widmark, 454 F.3d at 1069 (ALJ has a duty to develop the record where
     there is a "gap" in the medical evidence).

28       Further, the ALJ relied primarily on the opinion of a one-time examining physician,

11

conclusion regarding plaintiff's mental RFC assessment and whether plaintiff met or equaled Listing 12.06 may change.  Therefore, the Court does not reach plaintiff's claims that the ALJ failed to assess her mental RFC properly and, therefore, failed to properly find that she met/equaled Listing 12.06.

To properly review and reconsider these issues, the ALJ needs to develop the record regarding plaintiff's mental limitations.  Once this issue is clarified, the ALJ can determine what impact, if any, this has on her assessment of plaintiff's mental RFC and whether plaintiff's limitations met or equaled Listing 12.06.

## II.    On Remand, The ALJ Should Reassess Plaintiff's Physical RFC, Specifically With Respect To Her Right Upper Extremity.

Plaintiff contends that the ALJ did not properly assess her RFC, because the ALJ failed to include limitations involving her right upper extremity, postural and neck motion limitations, the side effects of her medications, and the impact of her obesity.  (Joint Stip. at 20.)

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan, 246 F.3d at 1202; 20 C.F.R. § 404.1527(d).

In determining a claimant's RFC, an ALJ will consider all the relevant evidence in the record. 20 C.F.R. § 404.1545(a).  In so doing, the ALJ will consider all claimant's medically determinable

---

Dr. Makhani, in assessing plaintiff's mental RFC.  (A.R. 18.)  Additional evidence obtained from plaintiff's treating physicians could impact the decision, because the opinions of treating physicians are generally entitled to the greatest weight. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).

impairments, including those that are not "'severe.'"  *Id.*

A.    The ALJ Failed To Properly Consider Plaintiff's Right Upper
      Extremity Limitations.

In a May 5, 2007 orthopaedic evaluation of plaintiff, Dr. Eytan Alpern, M.D. opined that plaintiff could push, pull, lift, and carry up to 20 pounds occasionally and 10 pounds frequently. (A.R. 314.) Plaintiff had no walking, standing, or sitting restrictions.  (*Id.*) Plaintiff cannot climb ladders due to the "loss of function of the right upper extremity and no overhead range of motion of the right shoulder."  (*Id.*)  Finally, manipulative activities on the right side below, but never above, shoulder level can be done occasionally.  (*Id.*)  Dr. Alpern did not assess any limitations on plaintiff's left upper extremity.  (*Id.*)

In assessing plaintiff's physical RFC, the ALJ afforded Dr. Alpern's opinion the greatest weight.  (A.R. 21.)   The ALJ concurred with Dr. Alpern's "lifting/carrying assessment and, essentially, with his sit, stand and walk assessments."  (*Id.*)  However, the ALJ rejected all of Dr. Alpern's limitations regarding plaintiff's use of her right upper extremity ("RUE"), because Dr. Alpern related plaintiff's RUE deficits to "poor efforts," "minimal pathology [wa]s identified in the right shoulder," and plaintiff's "then exhibited deficits (*e.g.*, motor loss, decreased sensation) were countered by normal findings from other source(s) and/or were assessed by Dr. Alpern as being in a non-dermatomal distribution."  (*Id.*)  While the ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions, he must still set forth specific and legitimate reasons supported by substantial evidence for rejecting Dr. Alpern's contradicted opinion.  Magallanes, 881 F.2d at 753-54.  The Court finds that the ALJ's reasons for rejecting Dr. Alpern's RUE limitations for plaintiff were not supported by substantial evidence.

First, the ALJ's findings -- that Dr. Alpern's RUE limitations were not supported, because Dr. Alpern himself noted that (1) "there were no studies today providing any pathological basis

for [plaintiff]'s presentation" and (2) plaintiff's "diffuse weakness and numbness and paresthesias in the [RUE]" have a "non[-]dermatormal distribution" -- are not legitimate reasons for rejecting Dr. Alpern's RUE limitations.  (A.R. 313.)  Despite his statement that there were no studies *that day* providing a pathological basis for plaintiff's RUE limitations and his assessment that the deficits in plaintiff's RUE had a nondermatomal distribution, Dr. Alpern still assessed plaintiff with several specific RUE limitations.  (A.R. 313-14.)  Further, the ALJ does not explain why her own interpretation, rather than that of Dr. Alpern, was correct.  *See* Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

The ALJ's next reason, *i.e.*, that Dr. Alpern noted that plaintiff's weakness in her RUE was "felt to be effort related," is also unpersuasive.  Here, despite noting plaintiff's poor effort, Dr. Alpern cites Dr. Jagvinder Singh's May 1, 2006 evaluation of plaintiff.  (A.R. 313-14.)  Specifically, Dr. Alpern states, "Of note, [plaintiff] had [an] exam on May 15, 2006 by Dr. Jagvinder Singh, Internal Medicine who noted that [plaintiff's] cervical spine range of motion was full and her shoulder range of motion was limited on the right to 80 degrees of abduction, 90 degrees of forward flexion, external rotation of 60 degrees, and internal rotation of 60 degrees."  (A.R. 313-14.)  This suggests that, despite plaintiff's poor effort, there was other evidence of record that plaintiff did have RUE limitations.

The ALJ's last reason, *i.e.*, that Dr. Alpern's RUE limitations were countered by "normal findings from other source(s)," is also unavailing.  (A.R. 21.)  It appears that the ALJ relies on an x-ray taken of plaintiff's shoulder on June 20, 2007, indicating "mild AC joint hypertrophy bilaterally."  (A.R. 34.)  First, while the ALJ considered a "mild AC joint hypertrophy bilaterally" to be a "normal finding," the ALJ fails to mention other findings in the record that supported Dr. Alpern's opinion.  Again, as noted above, Dr. Singh found that plaintiff's shoulder range of motion was limited on the right to 80 degrees of abduction and 90 degrees of forward flexion.  (A.R. 313-14.)  Dr. Thomas J. Grogan also noted that, on physical examination, plaintiff exhibited a full range of motion of the shoulders with the exception of forward flexion on right side to 110

degrees and abduction on the right to 120 degrees and noted "pain with these activities and pain with impingement maneuvers bilaterally." (A.R. 348.) Accordingly, evidence of record supported Dr. Alpern's opinion. *See* Reddick, 157 F.3d at 723 (reversing and remanding case, because ALJ's characterization of the record was "not entirely accurate regarding the content or tone"); *see also* Gallant v. Heckler, 743 F.2d 1450, 1456 (9th Cir. 1984)(holding that it was error for an ALJ to ignore or misstate competent evidence in the record to justify his conclusion). Thus, the ALJ's reasoning does not constitute a specific and legitimate reason for discrediting Dr. Alpern's opinion regarding plaintiff's RUE limitations.

Finally, it is not entirely clear upon whose medical opinion(s) the ALJ relied in assessing that plaintiff did not have any RUE limitations, and therefore, the ALJ's decision is not supported by substantial evidence. It appears that only one physician, Dr. Todd H. Katzman, in a July 16, 2009 "Medical Source Statement (Physical)," did not assess plaintiff with any upper extremity limitations. (A.R. 403.) Dr. Katzman nevertheless assessed plaintiff with a more restrictive RFC than that assessed by the ALJ, because he limited plaintiff to frequent lift/carry/upward pull of less than 10 pounds, stand/walk less than two hours, and sit continuously less than six hours in an eight-hour workday. (*Id.*) However, the ALJ appears to have rejected Dr. Katzman's opinion in its entirety[9] (A.R. 22), and all the treating, examining, and state agency physicians of record,

---

[9]     The ALJ rejected Dr. Katzman's July 16, 2009 opinion, because he "did not exam[ine] [plaintiff] until nearly two years after the proposed cessation date" and his "medical source statement . . . does not match with his examination in February 2009." (A.R. 22; internal citation omitted.)

The ALJ's first reason constitutes a specific and legitimate reason for discrediting Dr. Katzman's opinion. Dr. Katzman did not provide treatment at any time during the relevant period. (A.R. 401-03.) Thus, the ALJ was entitled to give little or no weight to Dr. Katzman's opinion to the extent that opinion was inconsistent with other substantial evidence in the record from within the relevant period (*e.g.*, the opinions of examining physicians Drs. Alpern and Singh and the State Agency reviewing physician who found plaintiff could perform at least light work (A.R. 314, 302, 329)), and could properly disregard such opinion without detailed explanation. *See* Freeman v. Apfel, 208 F.3d 687, 691 (8th Cir. 2000)(Where treating physician's evidence "did not pertain to [claimant's] condition during the relevant period [of disability] and was inconsistent with other substantial evidence that did pertain to the relevant period, the ALJ was under no obligation to give [the treating physician's] opinion controlling weight.")(citations omitted).

The ALJ's second reason for rejecting Dr. Katzman's opinion is also sufficient. The

1    except Dr. Katzman, limited plaintiff's RUE in some regard.

2

3          On May 15, 2006, examining physician Dr. Jagvinder Singh opined that plaintiff is able to

4    stand and walk for six hours with no sitting restrictions.  (A.R. 301-02.)  Plaintiff would be able

5    to occasionally lift and carry 25 pounds and 10 pounds frequently.  (A.R. 302.)  Dr. Singh did not

6    assess any postural and environmental limitations, but he did note that plaintiff would have

7    "problems lifting her right arm above shoulder level."  (*Id.*)

8

9          On May 18, 2007, a non-examining state agency physician found that plaintiff could do light

10   work with limited manipulative abilities.  (A.R. 328-335.)  Specifically, plaintiff could not do right

11   overhead reaching but could do occasional gross and fine manipulations with the RUE.  (A.R. 331.)

12

13         On July 8, 2008, non-examining state agency physician A. Ahmed, agreed with and gave

14   great weight to Dr. Alpern's assessment. (A.R. 368.)  He opined that plaintiff could do light work

15   with  occasional  climbing  of  ladder/rope/scaffolds.    (A.R.  364-68.)    Plaintiff  had  limited

16   manipulative  abilities,  specifically  she  could  occasionally  reach  overhead  with  both  upper

17   extremities and occasionally do gross and fine manipulations with the RUE.  (*Id.*)[10]

18

19   only treatment note of record from Dr. Katzman is dated February 5, 2009, in which Dr. Katzman
     notes that plaintiff's cervical spine revealed "minimal tenderness with no spasm" and lacked "10
20   degrees of flexion and extension of the cervical spine."  (A.R. 401.)  Examination of her cervical
     spine also revealed "mild tenderness with a minimal spasm" and a straight leg raising test was
21   negative. (*Id.*)  Dr. Katzman diagnosed plaintiff with "musculoligamentous strain, cervical spine"
     and "musculoligamentous strain, cervical spine."  (*Id.*) Accordingly, because Dr. Katzman's very
22   restrictive July 16, 2009 assessment does not appear to be well-supported and/or consistent with
     his mild February 5, 2009 treatment note, the ALJ provided a specific and legitimate reason for
23   rejecting Dr. Katzman's opinion.  *See* Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996)(ALJ
     properly disregarded treating doctor's report where it varied from his treatment notes); Young v.
24   Heckler, 803 F.2d 963, 968 (9th Cir. 1986)(treating doctor's conclusory opinion that claimant was
     disabled was properly rejected by the ALJ when it was internally inconsistent and not consistent
25   with doctor's prior medical reports).

26         [10]   Treating physician, Thomas Grogan, M.D., also assessed plaintiff with several RUE
     limitations.  However, the ALJ properly rejected his opinion.

27         On June 20, 2007, Dr. Grogan completed a "Physical Capacities Evaluation." and
28   opined that plaintiff could:  sit for three hours, stand for two hours, and walk for one hour in an
     eight-hour workday; occasionally lift and carry up to five pounds; do simple grasping of the left

Accordingly, that plaintiff did not suffer from RUE limitations is a medical opinion the ALJ is not qualified to make. The ALJ may not substitute her lay opinion for those of the medical sources in the record. *See generally*, Tackett v. Apfel, 180 F.3d 1094, 1102–03 (9th Cir. 1999)(ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006)(noting that an ALJ "'must not succumb to the temptation to play doctor and make [his] own independent

---

hand only; do no pushing and pulling or fine manipulation; and occasionally bend, squat, crawl, climb, and reach. (A.R. 341.) Plaintiff was also moderately restricted from activities involving unprotected heights, moving machinery, and driving automotive equipment. (*Id.*)

Dr. Grogan completed the same "Physical Capacities Evaluation" form on September 8, 2008, assessing plaintiff with the same limitations with which he had assessed her in June 2007, except that in September 2008, he opined that plaintiff could do simple grasping with both her left and right hands. (A.R. 387-88.) The ALJ rejected Dr. Grogan's opinion, because it did not "correlate with his own report of June 2007," and the September 2008 assessment of plaintiff was not within the relevant time period. (A.R. 21.) The ALJ's reasons were specific and legitimate.

The ALJ's finding that Dr. Grogan's opinions were inconsistent with his own treatment notes is a proper ground for rejecting a treating physician's opinion. *See* Connett, 340 F.3d at 873 (holding that a treating doctor's opinion regarding patient's RFC can be discounted if it is unsupported by doctor's own treatment notes); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)(discrepancies between a doctor's own notes and conclusions constitute a clear and convincing reason to reject that doctor's opinion).

In both the June 2007 and September 2008 "Physical Capacities Evaluation" forms, Dr. Grogan opined that plaintiff could perform work at less than the sedentary level. (A.R. 341, 387.) However, on June 20, 2007, on physical examination of plaintiff, Dr. Grogan noted that plaintiff had full range of motion ("ROM") of the shoulders, elbows, wrists, and hands bilaterally with the exception of limited forward flexion and abduction on both sides. (A.R. 348.) Motor and sensation examinations were unremarkable. (*Id.*) Plaintiff's "gait is normal to heel and toe without crutch, cane or orthoses." (*Id.*) On spine examination, plaintiff had limited ROM, but her lumbar spine had full ROM. (*Id.*) On lower extremity examination, plaintiff had full ROM of the "hips, right knee, ankles and subtalar joints bilaterally." (A.R. 349.) However, straight leg raising was positive for reproduction of back pain only bilaterally. (A.R. 349.) Her lumbar and cervical spine x-rays were unremarkable, however, x-rays of both shoulders indicated "mild AC joint hypertrophy bilaterally." (*Id.*) Dr. Grogan diagnosed plaintiff with "[b]ilateral shoulder impingement syndrome with AC joint hypertrophy," "[m]usculoligamentous sprain/strain, cervical spine," and "[h]istory of chronic depression." (A.R. 349.) He opined that plaintiff was "incapable of returning to work as a waitress and should be precluded from that type of activity." (*Id.*) Thus, Dr. Grogan's very restrictive functional limitations of plaintiff was unsupported by his own treatment notes or other evidence in the record.

The ALJ's rejection of Dr. Grogan's September 2008 evaluation, because it was not within the relevant time period and was not supported by other evidence in the record, also constitutes a specific and legitimate reason for discrediting Dr. Grogan's 2008 opinion. *See* Freeman, 208 F.3d at 691.

Accordingly, the ALJ properly declined to give full credit to Dr. Grogan's opinion.

17

1   medical findings'")(*citing* <u>Rohan v. Chater</u>, 98 F.3d 966, 970 (7th Cir. 1996)); <u>Stairs v. Astrue</u>, No.

2   CV 10–0132–DLB, 2011 WL 318330, at *12 (E.D. Cal. Feb.1, 2011)("When an ALJ rejects all

3   medical opinions in favor of his own, a finding that the RFC is supported by substantial evidence

4   is less likely.").

5

6   For the aforementioned reasons, the ALJ improperly rejected the RUE limitations that Dr.

7   Alpern assessed.  On remand, the ALJ must provide reasons in accordance with the requisite legal

8   standards, if they exist, for discrediting this physician's opinion.[11]

9

10              B.      <u>The ALJ Did Not Err In Failing To Include Postural Limitations</u>

11                      <u>Due To Plaintiff's Back And Neck Impairments in Plaintiff's RFC</u>.

12

13   Plaintiff next contends that the ALJ failed to assess properly the impact of her cervical and

14   lumbar impairments on her ability to perform postural activities such as climbing, balancing,

15   bending, stooping, crouching, crawling, holding the head in a static position or rotating the neck.

16   (Joint Stip. at 25-26.)  Contrary to plaintiff's contention, Dr. Alpern and the State Agency reviewing

17   physicians did not assess plaintiff with any postural limitations as a result of her back and neck

18

19

20   ───────────────────

21   [11]      There is no evidence that the ALJ properly considered, weighed, or had appropriate
    reasons for rejecting the opinions of Dr. Singh and the state agency reviewing physicians.  This

22   constitutes error.  As this case is being remanded for the reasons set forth *supra*, the ALJ should
    revisit his consideration of the various medical opinions on remand.  The Commissioner argues

23   that the ALJ implicitly rejected the opinions of Dr. Singh and the state agency physicians by
    rejecting Dr. Alpern's finding regarding plaintiff's overhead reaching. (Joint Stip. at 33.)  However,

24   the ALJ's implicit rejection of Dr. Singh's opinion does not meet the specific and legitimate
    standard contemplated by Ninth Circuit precedent.  *See* <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th

25   Cir. 1990)(mere summarization and implicit rejection of physician's opinion does not suffice).
    "Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the

26   decision the weight given to the opinions of a State agency [consultant]."   20 C.F.R. §
    404.1527(e)(2)(ii).  Further, in evaluating opinion evidence, an ALJ is required to consider the

27   opinions and findings of state agency reviewing physicians.  20 C .F.R. § 404.1527(e)(2)(I); *see*
    Social Security Ruling ("SSR") 96–6p (1996), 1996 SSR LEXIS 3, at * 5, 1996 WL 374180, at *2

28   (stating that ALJs "may not ignore" the opinions of state agency medical consultants "and must
    explain the weight given to these opinions in their decision").

1   pain.[12]  (Joint Stip. at 25-26; A.R. 314, 330, 366.)

2

3       Plaintiff further contends that "Drs. Grogan and Katzman each assessed the impact of her

4   neck and back impairments on functioning and both opined that plaintiff could not even perform

5   sedentary work."  However, as discussed above, the ALJ properly rejected both Drs. Grogan and

6   Katzman's opinions.  (*See, supra,* footnotes 9 and 10.)  Thus, substantial evidence supported the

7   ALJ's determination not to include any postural limitations due to plaintiff's back and neck

8   impairments.

9

10              C.     The ALJ Properly Considered The Side Effects Of Plaintiff's

11                     Medications.

12

13       Plaintiff contends that the ALJ failed to consider the side effects of her medications.  (Joint

14   Stip. at 26-27.)  Under Ninth Circuit law, the ALJ must "consider all factors that might have a

15   'significant impact on an individual's ability to work.'"  Erickson v. Shalala, 9 F.3d 813, 817 (9th

16   Cir. 1993)(citation omitted).  Such factors "may include side effects of medications as well as

17   subjective evidence of pain."  *Id.* at 818.  When the ALJ discounts the claimant's testimony as to

18   subjective limitations of side effects, he or she must support that decision with specific findings

19   similar to those required for excess pain testimony, as long as the side effects are in fact

20   associated with the claimant's medications.  *See* Varney v. Secretary, 846 F.2d 581, 584 (9th Cir.

21   1988).

22

23       However, medication side effects must be medically documented to be considered.  *See*

24   Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).  Despite plaintiff's contentions, the objective

25   medical record does not support the existence of medication side effects in this case.  While

26

27          [12]     Dr. Alpern and state agency physician Dr. Ahmed opined that plaintiff should not
28   climb ladders, but this limitation was due to a "loss of function of [plaintiff's] right upper
     extremity."  (A.R. 314, 366, 368.)

plaintiff indicated in her "Disability Report - Appeal" dated March 26, 2008 and testified at the August 24, 2009 administrative hearing that her medications cause her "drowsiness, sleepiness and tiredness" (A.R. 153, 448), there is no evidence that she reported any side effects from her medications to her physicians or that her physicians reported any functional limitations due to the side effects of her medications. Further, plaintiff fails to cite any medical evidence demonstrating that the alleged side effects of her medications caused her any functional limitations. _See_ Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001)(noting that side effects not "severe enough to interfere with [plaintiff's] ability to work" are properly excluded from consideration). Thus, there was no reason for the ALJ to consider any potential side effects.

### D.    The ALJ Properly Considered Plaintiff's Obesity**.**

Although obesity was removed from the Listing of Impairments in 1999, the condition may still factor into a multiple impairments analysis by virtue of its interactive effect on a claimant's other impairments, "but only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003).  In Celaya, the ALJ's failure to consider evidence of the claimant's obesity in a multiple impairments analysis was reversible error because:  (1) it was raised implicitly in the claimant's report of symptoms; (2) it was clear from the record that the claimant's obesity was at least close to the listing criterion and was a condition that could exacerbate her reported illnesses; and (3) in view of the claimant's _pro se_ status, the ALJ's observation of the claimant and the information on the record should have alerted him to the need to develop the record with respect to her obesity.  _Id._ at 1182.

The fact that a claimant has obesity does not by itself trigger a duty to perform the interactive analysis.  _See_ Burch, 400 F.3d at 682. A multiple impairments analysis with obesity is not required where, for example, the record does not indicate that obesity exacerbates the claimant's other impairments, or the claimant is represented by counsel who fails to help develop the record.  _Id._ at 682-83 (distinguishing Celaya when the record did not indicate exacerbation

of the claimant's other impairments by obesity, claimant was represented by counsel, and no evidence or theory of disability on the basis of obesity was set forth).

During an Orthopaedic Consultation performed in May 2007, by Dr. Alpern, plaintiff was measured at sixty-two inches tall and 188 pounds. (A.R. 311.)  The ALJ determined that her obesity was a severe impairment (A.R. 23) and found that limiting plaintiff to the light exertional level would recognize the "role of obesity in complicating [plaintiff's] back and neck pain" (A.R. 21).

Plaintiff makes a general argument that the ALJ failed to integrate any obesity-related limitations into the RFC finding.  (Joint Stip. at 27.)  However, plaintiff cites no evidence, and the record does not suggest, that plaintiff's obesity exacerbated her other impairments to a degree greater than the ALJ's RFC finding.  Burch, 400 F.3d at 684 (finding proper consideration of evidence of claimant's obesity where ALJ noted evidence of claimant's weight in consideration of plaintiff's remaining maximum ability to do sustained work and claimant did not "set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider").  Thus, the ALJ "properly considered [plaintiff's] obesity to the extent required based on the record," and this claim is without merit.  *Id.*

> E.   Until The ALJ Has Properly Considered The Medical Opinion
>      Evidence, The Court Cannot Assess The Adequacy Of The
>      Hypothetical Posed To The VE.

Plaintiff contends that the ALJ failed to pose a proper hypothetical to the VE, because her hypothetical did not include all of plaintiff's impairments.  (Joint Stip. at 31-32.)

In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations.  Embrey v. Bowen, 849 F.2d 418, 422-24 (9th Cir. 1988).  For the vocational

1    expert's testimony to constitute substantial evidence, the hypothetical question posed must

2    "consider all of the claimant's limitations."  <u>Andrews</u>, 53 F.3d at 1044 (holding that hypothetical

3    questions that do not include all of the plaintiff's limitations are insufficient and warrant remand).

4

5    Here, the hypothetical may be incomplete to the extent that it does not reflect

6    appropriately, in whole or in part, the medical opinion evidence of record with respect to plaintiff's

7    mental and RUE limitations.  On remand, the ALJ should either properly reject the opinions of

8    plaintiff's treating physicians and the state agency physician in accordance with the appropriate

9    legal standards, or the ALJ must incorporate all of plaintiff's limitations that are not properly

10   rejected into the hypothetical posed to the vocational expert.

11

12   **III.    The ALJ Failed To Consider Properly Plaintiff's Subjective**

13   **Complaints and Plaintiff's Husband's Statements.**

14

15   A.  <u>Plaintiff's Subjective Complaints</u>.

16

17   Once a disability claimant produces objective medical evidence of an underlying impairment

18   that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective

19   testimony as to the severity of the claimant's symptoms must be considered.  <u>Moisa v. Barnhart</u>,

20   367 F.3d 882, 885 (9th Cir. 2004); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991); *see also*

21   20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an

22   ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find

23   an applicant not credible by making specific findings as to credibility and stating clear and

24   convincing reasons for each."  <u>Robbins</u>, 466 F.3d at 883.  The factors to be considered in weighing

25   a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies

26   either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the

27   claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and

28   third parties concerning the nature, severity, and effect of the symptoms of which the claimant

1    complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. §

2    404.1529(c).

3

4         Here, the ALJ noted that she considered plaintiff's allegations of pain and other symptoms;

5    however, she concluded that plaintiff "does not present as fully credible or reliable through

6    testimony or documents." (A.R. 19.)  Significantly, the ALJ cited no evidence of malingering by

7    plaintiff.  Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to

8    her subjective symptom and pain testimony must be "clear and convincing."

9

10        As noted by the ALJ, plaintiff testified at the hearing that she was unable to work, because

11   she has constant pain involving her neck, back, and shoulders, as well as tingling, numbness, and

12   burning in her hands and feet.  (A.R. 19, 446.)  She testified that she suffers from PTSD and

13   cannot concentrate or focus.  (A.R. 19, 446-47.)  She also testified that her medication causes dry

14   mouth, drowsiness, and sleepiness.  (A.R. 19, 448.)  She described napping "many times a day"

15   because of her medication.  (A.R. 448.)  She also does "breathing exercise[s]," "put[s] [on] heat

16   pads and cold pads," and tries to take walks.  (A.R. 19, 448.)

17

18        The ALJ discounted plaintiff's testimony and credibility for the following reasons:  (1)

19   plaintiff "presents with inconsistencies between examinations"; (2) plaintiff's reports of daily

20   activities appear to conflict with her testimony; and (3) the lack of reports of medication side

21   effects by plaintiff.  (A.R. 20.)

22

23        First, the ALJ noted inconsistencies between plaintiff's medical examinations.  (A.R. 21.)

24   For example, the ALJ cites to the different gait testing results in May 2006, May 2007, and June

25   2007.  (A.R. 20.)  Different positive straight leg raising tests and cervical spine range of motion

26   results were assessed by various physicians.  (*Id.*)  The treating and examining doctors also differ

27   in their opinions as to plaintiff's limitations based on their own independent examinations and

28   clinical findings.  The ALJ does not clearly identify how any of these inconsistencies undermine

1  plaintiff's testimony regarding her symptoms.   Lester v. Chater, 81 F.3d 821, 834 (9th Cir.

2  1995)(noting that "the ALJ must identify what testimony is not credible and what evidence

3  undermines the claimant's complaints"); *see also* Bunnell, 947 F.2d at 347 (noting that "[i]f an

4  adjudicator could reject a claim of disability simple because [plaintiff] fails to produce evidence

5  supporting the severity of the pain, there would be no reason for an adjudicator to consider

6  anything other than medical findings").   Thus, this reason does not establish a clear and

7  convincing reason for discrediting plaintiff's testimony.

8

9       The ALJ's second reason for discrediting plaintiff -- *to wit*, that the daily activities plaintiff

10  reported to Dr. Makhani conflict with her testimony at the hearing before the ALJ -- also is not a

11  clear and convincing reason for finding plaintiff to be not credible.  (A.R. 20.)  Plaintiff reported

12  to Dr. Makhani, in April 2007, that she does light household chores, handles the family funds and

13  pays bills, relies on others for transportation, and has adequate self-care skills.  (A.R. 304.)  At

14  the hearing, plaintiff reported that her daily activities consist of taking her medication, doing

15  breathing exercises, putting on hot and cold pads, and trying to walk, but that she sleeps most

16  of the day due to her medication.  (A.R. 448.)  However, the Court finds that these statements

17  are not necessarily inconsistent, particularly given that the ALJ made no specific inquiries of

18  plaintiff during the November 2, 2009 administrative hearing regarding the extent of plaintiff's

19  ability to engage in daily activities; rather, the ALJ merely asked plaintiff, "What do you do in a

20  typical day?"  (A.R. 448.)  Furthermore, the ALJ did not explain how plaintiff's ability to engage

21  in minimal daily activities, such as light household chores, is inconsistent with the intensity,

22  persistence, and limiting effects of the symptoms she claims.  Nor did the ALJ indicate how

23  plaintiff's ability to perform these daily activities translates into an ability to do activities that are

24  transferrable to a work setting. *See* Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)(ALJ

25  erred in failing to make a "finding to the effect that the ability to perform those daily activities

26  translated into the ability to perform appropriate work").  As such, the ALJ's reasoning is neither

27  clear nor convincing.

28

The ALJ also questioned plaintiff's credibility based on the fact that she had not reported to physicians any adverse side effects from her medications. (A.R. 20.) This is a valid reasons for questioning a claimant's testimony. *See* Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(holding ALJ was permitted to consider the lack of evidence of side effects from prescription medication in discrediting claimant's testimony). Moreover, as discussed above, the record is devoid of any instances in which plaintiff complained of the medication side effects of which she complained at the hearing. However, plaintiff testified that she does not believe she is able to work because of pain and functional limitations, rather than due to the side effects of her medications. *Id.* at 48. Given this testimony, the Court finds this reason for discrediting plaintiff's testimony to be misguided.

For the aforementioned reasons, the ALJ failed to give clear and convincing reasons for discrediting plaintiff's testimony. On remand, the ALJ should inquire further into plaintiff's activities and medication side effects as they may affect her ability to work, and then reassess plaintiff's credibility.

### B.   The Testimony Of Plaintiff's Husband.

Plaintiff also contends that the ALJ failed to properly take into consideration the lay witness testimony of her husband. (Joint Stip. at 44-46.) In evaluating the credibility of a claimant's assertions of functional limitations, the ALJ must consider lay witnesses' reported observations of the claimant. Stout, 454 F.3d at 1053. "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 918–19 (9th Cir. 1993); 20 C.F.R. § 404. 1513(d) ("[W]e may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to . . . spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy."). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each

witness.'"  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009)(citation omitted).  Additionally, "the reasons 'germane to each witness' must be specific."  Stout, 454 F.3d at 1054.

Here, the ALJ stated she had reviewed statements by plaintiff's husband, but "afforded them minimal weight in assessing [plaintiff's] status as of June 2007," because "these [observations] predate the proposed cessation [of plaintiff's disability] by more than one year and appear [to be] inconsistent with the medical evidence."  (A.R. 20.)

On April 4, 2006, plaintiff's husband, Jose Luis A. Morales, completed a "Function Report-Adult-Third Party" describing plaintiff's daily activities and other functions.  (A.R. 134-41.)  He noted that plaintiff listens to audio cassettes to relax, does breathing exercises, and exercises her arm.  (A.R. 134.)  He also noted that plaintiff cannot do many activities due to the pain from her shoulder to her wrist.  (A.R. 134-41.)  He also noted that plaintiff tends to forget and gets confused.  (Id.)

The ALJ's first reason for rejecting plaintiff's husband's statements, i.e., that they predated the CD of plaintiff's disability by more than one year, was not a germane reason for discounting his testimony.  Significantly, her husband's 2006 report of plaintiff's symptoms, functional limitations, and daily activities is quite similar to plaintiff's 2009 testimony regarding her symptoms, limitations, and activities.  For example, plaintiff's husband noted that plaintiff's daily activities consist of listening to audio cassettes to relax, breathing exercises, and exercising her arm.  (A.R. 134.)  He also noted that plaintiff cannot undertake many activities due to the pain she experiences from her shoulder to her wrist.  (A.R. 134-41.)  He also noted that plaintiff tends to be forgetful and confused.  (Id.)  At the hearing, plaintiff also testified she does "breathing exercise," "put[s] [on] h[o]t pads and cold pads," and tries to take walks.  (A.R. 448.)  Further, she testified that she cannot concentrate or focus and has tingling, numbness, and burning in her hands and feet.  (A.R. 446.)  Thus, considering that plaintiff's symptoms and activities in 2006 and 2009 were similar, this was not a germane reason for discounting plaintiff's husband's statements.

The ALJ also discredited the observations of plaintiff's husband regarding her limitations, because the ALJ found his lay observations to be inconsistent with the medical evidence of record. (A.R. 20.)   However, as this Court has determined that this matter must be reversed and remanded for correction of errors in the evaluation of the medical evidence, the lay observations of plaintiff's husband should also be reevaluated.

## IV.   Remand Is Required.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman, 211 F.3d at 1175-78.  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.*, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful). On remand, the ALJ must correct the above-mentioned deficiencies and errors.

///
///
///
///
///
///

27

1

**CONCLUSION**

2

3          Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the

4   Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with

5   this Memorandum Opinion and Order.

6

7          IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this

8   Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

9

10          LET JUDGMENT BE ENTERED ACCORDINGLY.

11

12   DATED:  September 30, 2013

13                                                      _Margaret a. Nagle_

14                                          _____

15                                                MARGARET A. NAGLE
                                             UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28